UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

SANDHILLS GLOBAL, INC.,

              Plaintiffs,

     v.

LAWRENCE GARAFOLA, individual,
MARLENE GREENE, individual,
LAWRENCE GARAFOLA, JR.,
individual, BIDPATH, INC., a
Nevada corporation, and
BIDFACTS, LLC, a California
limited liability company,,

              Defendants.

Docket No.: 3:19-cv-17225
(MAS)(TJB)

*Civil Action*

**Returnable: November 4, 2019**

---

**DEFENDANT/COUNTERCLAIMANTS LAWRENCE GARAFOLA, SR.'S OPPOSITION TO PLAINTIFFS' PARTIAL MOTION TO DISMISS DEFENDANTS, LAWRENCE GARAFOLA, SR.'S COUNTERCLAIMS**

---

**TRINITY & FARSIOU, LLC**
STEVEN D. FARSIOU, ESQ. (026442000)
47 Maple Ave., Suite 7
Flemington, NJ 08822
P: (908) 824-7265
F: (908) 968-3891
*Attorneys for Defendants, Lawrence Garafola and Lawrence Garafola, Jr.*

# TABLE OF CONTENTS

PRELIMINARY STATEMENT ......................................... 1

STANDARD FOR DISMISSAL ........................................ 6

LEGAL ARGUMENT ................................................ 8

  POINT I - THE COUNTERCLAIM SETS FORTH A VALID CAUSE OF ACTION
FOR INVASION OF PRIVACY ...................................... 8

  POINT II - IN THE EVENT THIS COURT FINDS THAT DISMISSAL OF COUNT
SIX IS APPROPRIATE, AN AMENDMENT AT THIS STAGE IS THE PROPER
REMEDY ....................................................... 9

CONCLUSION .................................................. 11

# TABLE OF AUTHORITIES

## CASES

Alston v. Parker, 363 F.3d 229, 235 (3d Cir. 2004) .........9, 10

Ashcroft v. Iqbal, 556 U.S. 662, 678-79 (2009) .................6

Bell Atlantic Corp. v. Twombly, 127 S. Ct. 1955, 1965 (2007) ...7

Bull v. United Parcel Service, Inc., 665 F. 3d 68, 80 (3rd Cir. 1984)....................................................8

Canessa v. J.I. Kislak, Inc., 97 N.J. Super. 327, 351. ........9

Devlin v. Greiner, 147 N.J. Super. 446, 462 (Law Div. 1977). ...8

Dole v. Arco Chemical Co., 921 F.2d 484, 487 (3d Cir. 1990). ..10

Evancho v. Fisher, 423 F.3d 347, 350 (3d. Cir. 2005). ..........6

Foman v. Davis, 371 U.S. 178 (1962) ........................9, 10

Fowler v. UPMC Shadyside, 578 F.3d 203, 210-11 (3d Cir. 2009) ..6

Hennessey v. Coastal Eagle Point Oil Co., 129 N.J. 81, 95 (1992) ....................................................8

Hishon v. King and Spaulding, 467 U.S. 69, 73 (1984) ..........7

Jones v. Jersey City Medical Center, 20 F. Supp. 2d 770, 772 (D.N.J. 1998)..............................................6, 7

Moorse v. Lower Merion Sch. Dist., 132 F.3d 902, 906 (3d Cir. 1997)....................................................6

NN&R, Inc. v. One Beacon Ins. Group, 362 F.Supp.2d 514, 518 (D.N.J. 2005).................................................7

Papasan v. Allain, 478 U.S. 265, 283 (1986) ...................6

Phillips v. Co. of Allegheny, 515 F.3d 224 (3d Cir. 2008) .......9

## COURT RULES

Fed.R.Civ.P. 12(b)(6) .......................................6, 9

Fed.R.Civ.P. 15(a) ............................................9

**PRELIMINARY STATEMENT**

The case before the Court stems from the courtship by the Plaintiff, Sandhills Publishing Company ("Sandhills"), to acquire Defendant Larry Garafola Sr.'s ("Larry Sr.") company, Equipmentfacts, LLC ("Equipmentfacts"). As this litigation will disclose, Sandhills' intention from the beginning was to essentially steal Equipmentsfacts by making various promises to Larry Sr., acquire Larry Sr.'s knowledge of the industry and then terminate him based on bogus accusations. Furthermore, Sandhills rushed to file a Complaint knowing that Larry Sr. was going to initiate litigation over Sandhills' unlawful conduct.

As the Counterclaim details, Equipmentfacts was founded and built from the ground up by Larry Sr. in 2001. By 2005, Equipmentfacts was the industry leader for the equipment and truck auction industry. Sandhills made attempts to get into this industry but was not successful.

In 2015, Proxibid, a competitor based out of Nebraska, received a large amount of funding and began aggressively targeting Equipmentfacts' clients. At the same time, Larry Sr. became aware of another competitor, Bidcaller, whose online bidding technology was being used by Sandhills, although this did not lead to any loss of clients by Equipmentfacts.

In 2017, Equipmentfacts was in the process of updating its bidding technology so the system was up to date and user friendly.

One of the providers Larry Sr. interviewed was BidPath, a California company. Because BidPath's technology was cutting edge and mobile friendly, Equipmentfacts engaged its services. When this new technology launched, it was a huge success as sales increased and online participation increased.

Although Equipmentfacts' business was increasing again, so was Proxibid's business. At this point, Larry Sr. was approached by Evan Welch, Sandhills' Director of New Product Sales. Larry Sr. and Mr. Welch recognized that Equipmentfacts was the pioneer in the online bidding business and that Sandhills was successful in marketing and advertising. Both Larry Sr. and Mr. Welch acknowledged and agreed that Sandhills' online bidding system, Bidcaller, was dying.

Mr. Welch then began a very aggressive campaign to have Equipmentfacts join forces with Sandhills. Mr. Welch advised that Sandhills' relationship with Proxibid was extremely poor and that there was prior litigation between the two (2) companies. Mr. Welch made it clear that he wanted to put Proxibid out of business.

Mr. Welch's discussions with Larry Sr. went from a partnership to an acquisition. Negotiations went on for several months and then slowed down. It was not until December 2017 when discussions started up again. Eventually, Larry Sr. and Sandhills entered into a Letter of Intent. It was at this time that Sandhills began low balling Equipmentfacts due to the fact that Larry Sr. was

thoroughly engaged in the acquisition deal which took a lot of time away from Equipmentfacts.

Mr. Welch made several significant and key representations about the acquisition. Specifically, Mr. Welch represented that Larry Sr. and all of his employees would remain as if nothing happened other than having the marketing and advertising resources of Sandhills. Mr. Welch made it clear to Larry Sr. that Larry Sr. would be running the New Jersey office as he always has. Mr. Welch promised Larry Sr. more money and commissions based on this acquisition.

Based on all of the promises, Larry Sr. agreed to a much lower price for Equipmentfacts in the acquisition. In the last sixty (60) days leading up to the closing, Sandhills changed their attitude and became pushy and demanding. It was at this point, for the first time, Sandhills introduced several agreements which were now required to be signed or no deal would take place. Sandhills took advantage of the fact that Larry Sr. had focused so much on the acquisition that Equipmentfacts' revenue decreased.

Based on all of the promises made by Sandhills and the fact that the parties were so far along in the process, Larry Sr. signed them after getting reassurances from Mr. Welch that Sandhills would honor their word as to Larry Sr. and his staff remaining as is and running the New Jersey office.

3

On July 16, 2018, the acquisition took place. Pursuant to the agreement, there were several contractual obligations that Sandhills failed to adhere to, including but not limited to, the preparation of a specific job description for Larry Sr. with the incorporation of a commission structure. Even though Larry Sr. repeatedly inquired as to when this was going to be completed, nothing had been done. Furthermore, in complete contrast to Sandhills' representations, Sandhills stripped Larry Sr. of control and created a hostile work environment.

In August 2019, without any explanation, Larry Sr. was told to meet with Mr. Welch, who was in New Jersey, to retrieve Larry Sr.'s work computer under the guise of a "security breach." From this point forward, Larry Sr. had no access to his work email or Sandhills' computer system. Larry Sr. was then told he needed to be in Lincoln, Nebraska for a meeting but was not told the purpose for the meeting. Soon thereafter, Mr. Welch and Sandhills' in-house counsel appeared at the New Jersey office and sent all of the employees home with no explanation.

Larry Sr. advised, through counsel in a letter dated August 5, 2019, that Sandhills was in violation of several contractual obligations. Via letter August 7, 2019, Sandhills then took the unsupported position that Larry Sr. was terminated "for cause."

Thereafter, this litigation was commenced. Since then, it has been discovered that Sandhills has been utilizing Larry Sr's email

address to give the false impression to clients that Larry Sr. is still employed, as this would be a benefit to Sandhills based on Larry Sr.'s expertise. Sandhills' Nebraska counsel has stated that Sandhills is permitted to do whatever they want with their email addresses. However, giving the false impression that Larry Sr. is still employed is unlawful as Sandhills is utilizing Larry Sr.'s likeness for personal profit.

In addition, Sandhills has unlawfully accessed Larry Sr.'s personal Staples account wherein Sandhills has accessed personal and confidential information. In this respect, Sandhills has a business staples account. Larry Sr. has a personal Staples account. The accounts are designated by telephone number. Larry Sr.'s personal account is attached to his personal cell phone. Sandhills has attached their login credentials and information to Larry Sr.'s personal account permitting it to access Larry Sr.'s personal account.

Based on the above, Sandhills' motion to dismiss Count Six (invasion of privacy) must be denied. As for Count Seven (breach of contract-lease agreement), Larry Sr. will agree to dismiss this count without prejudice. Larry Sr. will be filing either a Third Party Complaint in this action or will seek to litigate the breach of contract claim in State court.

## STANDARD FOR DISMISSAL

Fed.R.Civ.P. 12(b)(6), provides, in part:

> (b)  How to Present Defenses.  Every defense to a claim for relief in any pleading must be asserted in the responsive pleading if one is required.  But a party may assert the following defenses by motion . . .
>
> (6)  failure to state a claim upon which relief can be granted . . .

In evaluating a motion to dismiss for failure to state a claim pursuant to Fed.R.Civ.P. 12(b)(6), a court is required to accept as true all allegations in the Complaint and all reasonable inferences that can be drawn therefrom, and view them in a light most favorable to the non-moving party. Papasan v. Allain, 478 U.S. 265, 283 (1986); Evancho v. Fisher, 423 F.3d 347, 350 (3d. Cir. 2005). Reciting elements of a cause of action by mere conclusory statements does not suffice. Only a complaint that states a plausible claim for relief survives a motion to dismiss. Ashcroft v. Iqbal, 556 U.S. 662, 678-79 (2009); Moorse v. Lower Merion Sch. Dist., 132 F.3d 902, 906 (3d Cir. 1997). A complaint must show more than an alleged entitlement to relief. It requires more than the possibility of misconduct. Fowler v. UPMC Shadyside, 578 F.3d 203, 210-11 (3d Cir. 2009).

The question is whether a plaintiff can prove any set of facts consistent with his/her allegations that will entitle him/her to relief, not whether he/she will ultimately prevail. Jones v. Jersey

City Medical Center, 20 F. Supp. 2d 770, 772 (D.N.J. 1998); See also Hishon v. King and Spaulding, 467 U.S. 69, 73 (1984)(finding dismissal of Complaint appropriate only when it is clear no relief can be granted under any set of facts that would prove consistent with the allegations). "Factual allegations must be enough to raise a right to relief above the speculative level." Bell Atlantic Corp. v. Twombly, 127 S. Ct. 1955, 1965 (2007). "Therefore, in deciding a motion to dismiss, a court should look to the face of the complaint and decide whether, taking all of the allegations of fact as true and construing them in a light most favorable to the non-movant, plaintiff's allegations state a legal claim." NN&R, Inc. v. One Beacon Ins. Group, 362 F.Supp.2d 514, 518 (D.N.J. 2005); Phillips v. County of Allegheny, 515 F.3d 224, 233 (3d Cir. 2008) ("In reviewing a motion to dismiss for failure to state a claim under Rule 12(b)(6), a court must take all allegations in the complaint as true, viewed in the light most favorable to the plaintiff, and determine whether, under any reasonable reading of the complaint, the plaintiff may be entitled to relief.").

Here, Larry Sr. has met his burden to defeat Sandhills' motion to dismiss as to Count Six (invasion of privacy) in the Counterclaim. He has set forth facts sufficient to raise a reasonable expectation that discovery will uncover **further** evidence of the elements necessary to prove the invasion of privacy claim. Where the complaint, as here, sets forth the specific

7

wrongful conduct perpetrated by Sandhills, which gives rise to the violation claimed, allowing the complaint to be stricken is a draconian measure that is frowned upon by the federal courts. See Bull v. United Parcel Service, Inc., 665 F. 3d 68, 80 (3d. Cir. 1984) (Dismissals with prejudice are "drastic sanctions."). Larry Sr., therefore, respectfully requests that this Court deny Sandhills' motion to dismiss Count Six.

## LEGAL ARGUMENT

### POINT I

**THE COUNTERCLAIM SETS FORTH A VALID CAUSE OF ACTION FOR INVASION OF PRIVACY**

The law on invasion of privacy protects an individual from interference with their right "to be let alone." Devlin v. Greiner, 147 N.J. Super. 446, 462 (Law Div. 1977). Furthermore, "an invasion of privacy need not be physical; it can also arise by the use of the defendant's senses… to oversee or overhear the plaintiff's private affairs… or [i]t may be by some other form of investigation or examination into his private concerns" Hennessey v. Coastal Eagle Point Oil Co., 129 N.J. 81, 95 (1992) (citing Restatement (Second) of Torts, §652B (1977) (internal quotation marks omitted)).

Here, Count Six alleges that Sandhills has accessed and stole private contact information and communications from Larry Sr.'s personal Staples account. In addition, Sandhills is utilizing

Larry Sr.'s "work" email address making it appear that he is still employed with Sandhills. In doing so, they are using Larry Sr.'s likeness for purposes of generating profit and falsely representing that Larry Sr. is still employed. See e.g. <u>Canessa v. J.I. Kislak, Inc</u>., 97 N.J. Super. 327, 351 (Law Div. 1967 (holding that "insofar as plaintiffs' claim is based on the appropriation of their likeness and name for defendant's commercial benefit, it is an action for invasion of their 'property' rights and not one for 'injury to the person.'").

Based on the above allegations, and because the Court must accept Larry Sr.'s factual allegations as true with all inferences in Larry Sr.'s favor, Sandhills' motion to dismiss Count Six must be denied as Larry Sr. has alleged a legitimate cause of action.

**POINT II**

**IN THE EVENT THIS COURT FINDS THAT DISMISSAL OF COUNT SIX IS APPROPRIATE, AN AMENDMENT AT THIS STAGE IS THE PROPER REMEDY**

The Third Circuit has found that "if a complaint is subject to a Rule 12(b)(6) dismissal, a district court must permit a curative amendment unless such an amendment would be inequitable or futile." <u>Phillips v. Co. of Alleheny</u>, 515 F.3d 224 (3d Cir. 2008) (*citing* <u>Alston v. Parker</u>, 363 F.3d 229, 235 (3d Cir. 2004)). Under the Federal Rules of Civil Procedure, leave to amend pleadings shall be "freely give[n] when justice so requires." Fed. R. Civ. P. 15(a)(2). The United States Supreme Court, in <u>Foman v.</u>

Davis, 371 U.S. 178 (1962), articulated the liberal policy of allowing amendments underlying Rule 15(a) as follows:

> If the underlying facts and circumstances relied upon by the plaintiff may be a proper subject of relief, he ought to be afforded an opportunity to test his claim on the merits. In the absence of any apparent or declared reason – such as undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of the allowance of the amendment, futility of amendment, etc. – the leave sought should, as the rules require, be freely given. *Id* at 182. See also, *Bechtel v. Robinson,* 886 F.2d 644 (3d Cir. 1989).

This liberal approach ensures that a particular claim will be decided on the merits rather than on technicalities. Dole v. Arco Chemical Co., 921 F.2d 484, 487 (3d Cir. 1990). Moreover, even if Plaintiffs do not seek leave to amend their pleading, the court must at least provide Plaintiffs with the opportunity to do so, "unless the [court] finds that amendment would be inequitable or futile." Alston, *supra.*

Accordingly, if this Court is inclined to dismiss Count Six, Larry Sr. respectfully requests that he be permitted to amend his Counterclaim.

## CONCLUSION

Based on the foregoing, Defendants' motion must be denied as to Count Six.

                              Respectfully submitted,

                              STEVEN D. FARSIOU